**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| TERRACON CONSULTANTS, INC. and<br>TT COMPANIES, INC.,<br><br>        Plaintiffs,<br><br>v.<br><br>CHESTER J. DRASH, JR.,<br><br>        Defendant, | Case No. 12-2345-EFM |

**MEMORANDUM AND ORDER**

This matter is before the court on Drash Consultants LLC's motion to quash plaintiffs' subpoena duces tecum (Doc. 58) and Chester Drash's motion to compel discovery (Doc. 66). Both motions are opposed. Drash Consultants' motion to quash is DENIED and Chester Drash's motion to compel is GRANTED IN PART and DENIED IN PART.

**Background**

Terracon Consulting, Inc. provides nationwide consulting services related to engineering and other scientific matters, including geotechnical, environmental, construction and facility issues. TT Companies, Inc. is a holding company that owns all of the stock in TSVC, Inc. TSVC, in turn, owns all of the stock of Terracon. In October 2004, Terracon acquired Drash Consulting Engineers, Inc., a Texas based consulting firm owned by Chester

Drash. Drash served as a Division Manager and Senior Vice President of Terracon from October 2004 until his departure in July 2011. Drash also served on TT Companies' board of directors from January 2008 to July 2011.

Highly summarized, plaintiffs contend that Drash misrepresented what he intended to do when he left Terracon and instead created a new company in Texas that competes with Terracon. Plaintiffs allege that Drash began soliciting Terracon's clients and employees as early as 2008 to "leave with him" and wrongfully took a large volume of Terracon's proprietary information. Plaintiffs' claims include: (1) breach of fiduciary duty, (2) fraudulent misrepresentation, (3) tortious interference with business relationships, and (4) misappropriation of trade secrets.

### Drash Consultants, LLC's Objections to Subpoena Duces Tecum and Motion to Quash (Doc. 58)

Drash Consultants, LLC is the consulting company which Drash created after he left Terracon. Drash Consultants asserts a lengthy list of one sentence objections to plaintiffs' subpoena and moves to quash the subpoena pursuant to Fed. Rule Civ. P. 45(c)(3). Although Drash Consultants was technically a "non-party" when it filed its objections and motion, Drash Consultants is now represented by the same attorney who represents Mr. Drash. Drash Consultants has been the subject of numerous discovery conferences. More importantly, plaintiffs filed a motion to amend to add Drash Consultants as a party before the motion to

quash was filed and, by separate order, the motion to amend has been granted. Accordingly, Drash Consultant's objections based on its status as a "non-party" are moot.

Drash Consultants also asserts that the subpoena: (1) seeks irrelevant information and confidential records; (2) is burdensome and ambiguous; (3) is a duplication of other requests; and (4) exposes Drash Consultants to civil liability. These objections are asserted in conclusory sentences without any supporting argument.[1]

The court has reviewed the requests and finds that the subpoena seeks relevant information and is neither vague nor ambiguous. Moreover, a stipulated protective order has been entered in this case (Doc. 27) and Drash Consultants provides no explanation why the protective order is inadequate to deal with "confidential" information disclosed during discovery. No argument or evidence has been offered showing that the subpoena is burdensome, duplicative of other requests, or "exposes Drash Consultants to civil liability." Under the circumstances, Drash Consultants' objections are overruled and its motion to quash the subpoena shall be DENIED.

**IT IS THEREFORE ORDERED** that Drash Consultants' objections are overruled and its motion to quash **(Doc. 58)** is **DENIED.** Drash Consultants shall produce the records requested by the subpoena by **May 6, 2013.**

---

[1] Drash Consultants filed no reply brief and challenged none of plaintiffs' arguments in opposition to the motion to quash.

**Drash's Motion to Compel (Doc. 66)**

Chester Drash served plaintiffs with a set of interrogatories and plaintiffs responded with answers and objections. Drash moves to overrule plaintiffs' "general objections" and to require more complete answers to certain interrogatories. Drash also seeks to resolve certain issues concerning electronic discovery. The parties' arguments are addressed in greater detail below.

**General Objections**

Plaintiffs' response to Drash's interrogatories begin with a set of "general objections." Drash argues that plaintiffs' general objections are improper and, as an example, quotes plaintiffs' general objection: "[subject] to the extent defendant seeks information or documents that are private and confidential and/or that constitute confidential proprietary business, financial, or trade secret information." Plaintiffs' response is not entirely legally coherent but suggests that the assertion of "general objections" is proper.[2]

Plaintiffs' arguments are misguided and rejected. In this district, general objections are considered overly broad and "worthless" unless the objections are substantiated with

---

[2] Plaintiffs argue that they made this general objection to "establish the applicability of the Stipulated Protective Order and have produced proprietary and confidential materials with appropriate protective order designations." However, if this information has been produced in response to specific discovery requests, it is not clear why a general objection is necessary.

detailed explanations. See, e.g., Cardenas v. Dorel Juvenile Group, Inc., 232 F.R.D. 377, 381 (D. Kan. 2005); Starlight Intern. Inc. v. Herlihy, 181 F.R.D. 494, 497 (D. Kan. 1998). For example, plaintiffs assert a general objection to Drash's interrogatories "to the extent they call for plaintiff[s] to do more than is required by the Federal Rules of Civil Procedure." Unfortunately, plaintiffs' interrogatory response contains no clue as to what rule of civil procedure Drash may have violated. Similarly, plaintiffs object to Drash's interrogatories "to the extent that the information defendant seeks is unreasonably cumulative, duplicative, or obtainable from some other source that is more convenient, less burdensome, or less expensive." Again, the objection provides no hint of the specific information which plaintiffs object to disclosing. These boilerplate "general objections" only cause uncertainty and delay and are improper. Starlight Intern, Inc. at 497.

Unfortunately, Drash does not point to any specific discovery requests that are affected by the "general objections" or challenge any of plaintiffs' arguments or updates concerning the status of individual discovery requests.[3] Under the circumstances, the parties' debate about the propriety of "general objections" appears to be an academic exercise which the court will not belabor.

---

[3] For reasons unexplained, Drash did not file a reply brief. Plaintiffs indicate in their response brief that a number of interrogatory answers have been supplemented and are no longer in dispute.

**Interrogatory No. 1**

Interrogatory No. 1 asks plaintiffs to state the date, time, place, and individuals involved that show that Drash agreed to a non-compete agreement after October 18, 2007. Plaintiffs oppose the discovery request on the grounds of relevance, arguing that they are not alleging liability based on a "non-compete agreement." Rather, plaintiffs contend that Drash owed plaintiffs a common law duty to not compete "while acting as their fiduciary." Plaintiffs have sufficiently answered the interrogatory and the request to compel a more complete answer shall be DENIED.

**Interrogatory No. 2**

Interrogatory No. 2 is similar to Interrogatory No. 1 and asks plaintiffs to provide detailed information showing that Drash agreed after October 18, 2007 to not solicit or otherwise employ any Terracon employee. Again, plaintiffs clarify that they are not alleging liability based on any contractual agreement. Moreover, plaintiffs assert that they have no information responsive to Interrogatory No. 2. Drash's motion to compel a more complete response to Interrogatory No. 2 shall be DENIED.

**Interrogatory No. 3**

Interrogatory No. 3 seeks the date, time, place, and individuals involved that show that Drash agreed to "retire" or otherwise refrain from endeavors in his professional engineering

field following his departure from plaintiffs' employment. Plaintiffs have adequately answered this interrogatory and the motion to compel further information shall be DENIED.

**Interrogatory Nos. 4 & 5**

Plaintiffs have withdrawn their objections to these two interrogatories and agree to produce the requested information; therefore, the motion to compel a more complete answer to Interrogatory Nos. 4 & 5 is MOOT.

**Interrogatory Nos. 9 to 11**

Interrogatory No. 9 asks plaintiffs to identify proprietary software developed in-house from October 2004 through July 2011. Interrogatory No. 10 asks for the identity of plaintiffs' employees who have been granted access to the "source codes" of plaintiffs' proprietary software from October 2004 to July 2011. Interrogatory No. 11 ask plaintiffs to identify the employees that have been granted "application use" to plaintiffs' proprietary in-house software from October 2004 to 2011.

Drash's motion to compel answers to Interrogatory No. 10 and 11 is summarily DENIED because Drash has failed to show the relevance of the identity of certain employees to the claims and defenses currently asserted in this case. With respect to Interrogatory No. 9, Drash contends that he needs this information to "identify all proprietary software to facilitate additional discovery requests." Drash also argues that this information is relevant

because plaintiffs contend that Drash wrongly appropriated plaintiffs' software. The court is satisfied that Drash has shown the relevance of the information requested by Interrogatory No. 9; therefore, the motion to compel an answer to Interrogatory No. 9 shall be GRANTED.

**Interrogatory Nos. 12(a) and 12(b)**[4]

Interrogatory Nos. 12(a) and 12(b) are convoluted, poorly drafted interrogatory requests asking plaintiffs to identify documents concerning "confidential information, proprietary information, secret data, trade secrets, competition sensitive information, corporate restricted data, and personnel files." The court agrees with plaintiffs' objection that the interrogatories, as currently drafted, are vague, ambiguous, and overly broad. Moreover, the use of an interrogatory to "identify" documents is a needless waste of resources; a properly framed request for production is the more appropriate method for securing this type of information. Under the circumstances, Drash's request to compel complete answers to Interrogatory Nos. 12(a) and 12(b) shall be DENIED. Drash may resubmit requests for production that are more narrowly tailored to secure the documents ***on which plaintiffs are relying on*** to support their claims in this case. Plaintiffs must identify the individual documents responsive to the production requests by Bates-stamped numbers.

---

[4] Drash served two separate interrogatories labeled "Interrogatory No. 12." For clarity, the court renames the two interrogatories "12(a)" and "12(b)."

**Interrogatory No. 13**

Interrogatory No. 13 asks plaintiffs to identify the representatives responsible for advising Drash of his duties, responsibilities and obligations upon his departure on July 1, 2011. Plaintiffs contend that their objections are valid but that they have "now responded to this interrogatory." Drash does not dispute that the interrogatory has now been answered and the motion to compel this interrogatory is MOOT.

**Production Requests and the Scope of Electronic Discovery**

Drash asserts that the parties have resolved a number of disputes concerning ESI discovery but that issues concerning (1) ESI custodians, (2) search terms, and (3) redactions by plaintiffs remain. With respect to custodians, plaintiffs have searched the electronic files of 14 individuals who might have relevant information concerning the claims and defenses in this case but Drash argues that plaintiff should be ordered to search the files of an additional 31 custodians. The list of "custodian" records searched by plaintiffs reflects a reasonable scope of discovery considering the issues in this lawsuit and Drash's arguments for expanding the search to another 31 custodians because there "might" be something relevant in their email records is not persuasive. Accordingly, Drash's request for an order requiring plaintiffs to search the email accounts of another 31 custodians shall be DENIED.

Drash also requests an order directing plaintiffs to use the terms "confidential" and "proprietary" in its search terms. Plaintiffs oppose the use of the requested search terms

because the term "confidential" appears in Terracon's standard email footer and the term "proprietary" is similarly used in the standard email footers on many of the companies with which Terracon does business. The end result of using such search terms yields search "hits" of a massive number of documents having no relevance to the claims and defenses in this case. The court agrees that the two search terms requested by Drash cause an overly broad identification of documents; therefore, Drash's request for an order directing plaintiffs to search for documents using the terms "confidential" and "proprietary" shall be DENIED.

Finally, plaintiffs assert that they "did not redact documents as defendant's motion claims" and that the parties have conferred and this issue is resolved. Accordingly, Drash's request for an order concerning redactions is MOOT.

**IT IS THEREFORE ORDERED** that Chester Drash's motion to compel (Doc. 66) is GRANTED IN PART and DENIED IN PART, consistent with the rulings herein. Plaintiffs shall provide the information ordered produced by **April 29, 2013.**

**IT IS SO ORDERED.**

Dated at Wichita, Kansas this 16th day of April 2013.

S/ Karen M. Humphreys
_____
KAREN M. HUMPHREYS
United States Magistrate Judge