# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| TERRACON CONSULTANTS, INC., and TT COMPANIES, INC., <br><br> *Plaintiffs,* <br><br> vs. <br><br> CHESTER J. DRASH, JR., and DRASH CONSULTANTS, LLC, <br><br> *Defendants.* | Case No. 2:12-cv-02345-EFM-KMH |

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiffs' Motion to Enforce Settlement (Doc. 90), Plaintiffs' Motion to Strike Portions of Affidavits of Carl P. Tobey and Chester Drash (Doc. 94), and Defendant Chester Drash's Motion for Leave to File Additional Suggestions in Opposition to Plaintiffs' Motion to Enforce Settlement (Doc. 104). All three motions relate to a Memorandum of Settlement Agreement the parties entered into on May 7, 2013, after mediating this litigation and a related arbitration proceeding. For the following reasons, the Court grants Plaintiffs' Motion to Enforce Settlement, grants in part and denies in part Plaintiffs' Motion to Strike, and denies Drash's Motion for Leave to File Additional Suggestions.

## I. Factual and Procedural Background

Terracon Consultants, Inc. ("Terracon") is a Delaware corporation with its principal place of business in Johnson County, Kansas. Terracon provides nationwide consulting services related to engineering and other scientific matters, including geotechnical, environmental, construction, and facility issues. TT Companies, Inc. ("TT Companies") is a holding company that owns all of the outstanding stock of TSVC, Inc., which, in turn, owns all of the outstanding stock of Terracon. In October 2004, Terracon acquired Drash Consulting Engineers, Inc., an engineering consulting firm owned by Defendant Chester Drash and others. Drash served as Division Manager and Senior Vice President of Terracon from October 2004 until he resigned in July 2011. Drash also served on TT Companies' board of directors from January 2008 to July 2011.

Plaintiffs generally allege that when Drash left Terracon in July 2011, he misrepresented what he intended to do and instead formed a new company that competes with Terracon. Plaintiffs also allege that Defendants misappropriated a large volume of Terracon's proprietary information and that Defendants are using, without Terracon's permission, Terracon's federally registered and common law trademarks. Plaintiffs' Second Amended Complaint asserts claims for misrepresentation, misappropriation of trade secrets, breach of fiduciary duty, conspiracy to breach fiduciary duty, tortious interference, trademark infringement, and unfair competition against Defendants. In addition, Drash initiated an arbitration proceeding against TT Companies for breach of a promissory note given him as consideration for repurchase of his shares of stock in TT Companies when he resigned in July 2011.

On May 7, 2013, the parties mediated this lawsuit and the related arbitration proceeding. At the end of the day, the parties executed a "Memorandum of Settlement Agreement"

("Settlement Memorandum") prepared by the mediator. The Settlement Memorandum provides the key terms of the parties' agreement, including a payment schedule setting forth Terracon's obligation to pay Drash under the promissory note, mutual releases of all claims, and dismissal with prejudice this suit and Drash's arbitration proceeding. The Settlement Memorandum also contains a provision regarding a list of documents that Plaintiffs claim as their intellectual property or trade secrets that were allegedly misappropriated by Defendants. Paragraph 1.D. of the Settlement Memorandum states as follows regarding this list:

> Attached to this Memorandum are three versions of a list of electronic files in possession of Drash and/or DC. This settlement is contingent upon subsequent agreement of the parties about which files may be removed from the list. Drash will submit a proposed list of files to be removed from the list and if Terracon does not agree, then the parties will negotiate in good faith as to removal of files from the list. If an agreement is reached, then Drash and DC shall permanently delete and wipe all electronic documents remaining on the list. Drash, DC and either (i) The Tobey Law Firm or (ii) Drash's IT consultant shall certify to Terracon that the agreed-upon remaining files from attached list have been permanently deleted and wiped. If such good faith negotiations fail to produce an agreement by 3:00 p.m. CDT, May 17, 2013, then this settlement agreement shall be void.[1]

Finally, the Settlement Memorandum contains a heading titled "Documents Required" and lists under that heading "Settlement Agreement, including releases of claims" and "Stipulation/Order of Dismissal with prejudice for lawsuit and arbitration."[2]

Over the next week, the parties communicated regarding the list of documents and a formal Settlement Agreement. Plaintiffs contend that the parties agreed on a final list on Friday, May, 17, 2013, at 10:26 a.m., when Plaintiffs' counsel sent Defendants' counsel an e-mail

---

[1] Settlement Memorandum, Doc. 93-2, p. 2.

[2] Settlement Memorandum, Doc. 93-2, p. 3.

agreeing to remove a certain file from the list and stating, in part, "[s]o we are agreed on a list."[3] Defendants disagree, asserting that the parties never reached an agreement as to which documents should be removed from the list.

With regard to the formal Settlement Agreement referenced in the Settlement Memorandum, Plaintiffs' counsel sent Defendants' counsel a proposed draft on May 13, 2013. Defendants' counsel responded to that e-mail on May 17, 2013, at 10:53 a.m., stating that the parties should simply prepare a supplement to the Settlement Memorandum that identifies an agreed upon list of documents. A few hours later, Defendants' counsel sent another e-mail to Plaintiffs' counsel stating that the Settlement Memorandum required formal settlement documents to be prepared by 3:00 p.m. that day for the settlement to be effective. Plaintiffs' counsel responded, stating that he would not be able to complete the formal Settlement Agreement by the 3:00 p.m. deadline but that it was not necessary for the settlement to be enforceable. The parties did not and currently have not come to an agreement on the formal Settlement Agreement. The primary issue preventing the parties from completing such agreement is whether paragraph 1.D. of the Settlement Memorandum requires Defendants to delete all copies of each file on the list or only the specific electronic file listed, leaving Defendants in possession of any other copies they may have of the same document.

On May 20, 2013, the parties held a telephone scheduling conference with the arbitrator regarding the arbitration proceeding. During the teleconference, TT Companies asserted that the parties had settled this case and the arbitration proceeding through the Settlement Memorandum. Drash, however, disagreed. The arbitrator then ordered the parties to submit briefs on whether

---

[3] E-mail from Plaintiffs' Counsel to Defendants' Counsel, Doc. 93-6 p. 2.

the arbitration agreement was still in effect such that he retained jurisdiction or whether his jurisdiction was superseded by the Settlement Memorandum.

On June 20, 2013, after submitting its brief to the arbitrator, Plaintiffs filed a Motion to Enforce Settlement, asking the Court to enforce the terms of the Settlement Memorandum. Defendants' response to Plaintiffs' Motion to Enforce included the Affidavits of Carl P. Tobey and Chester Drash. Plaintiffs have also filed a Motion to Strike portions of these affidavits on the basis that they contain inadmissible legal conclusions and argument.

On July 3, 2013, the arbitrator issued an Order finding that no agreement was reached by the 3:00 p.m. deadline on May 17, 2013, and as a result, the Settlement Memorandum was void pursuant to its terms. On August 27, 2013, the arbitrator held a hearing on the remaining issues in the arbitration. The arbitrator issued his Final Order and Arbitration Award ("Final Award") on September 11, 2013, sustaining Drash's breach of contract claim and awarding Drash damages. Drash subsequently filed with the Court a Motion for Leave to File Additional Suggestions In Opposition to Plaintiffs' Motion to Enforce Settlement arguing that the arbitrator's Final Award precludes the Court's examination of whether an enforceable settlement was reached.

The Court will decide Plaintiffs' Motion to Strike Portions of Affidavits of Carl P. Tobey and Chester Drash, Drash's Motion for Leave to File Additional Suggestions in Opposition to Plaintiffs' Motion to Enforce Settlement, and Plaintiffs' Motion to Enforce Settlement in this Order.

**II.     Plaintiffs' Motion to Strike Portions of the Tobey and Drash Affidavits**

Plaintiffs contend that portions of the affidavits that Defendants submitted in opposition to Plaintiffs' Motion to Enforce Settlement should be stricken. Specifically, Plaintiffs contend

that paragraphs 5, 9 through 14, and 16 of the Drash Affidavit and paragraphs 4 (fifth through ninth bullets), 5, and 7 of the Tobey Affidavit contain legal conclusions and argument that are inadmissible. Defendants did not file a response in opposition to Plaintiffs' Motion to Strike.

"Under the personal knowledge standard, [a declaration] is inadmissible if 'the witness could not have actually perceived or observed that which he testifies to.' "[4] Conclusory or self-serving affidavits are insufficient.[5] The Court must also disregard legal conclusions.[6] Additionally, statements of "mere belief in [a declaration] must be disregarded."[7]

The Court finds that portions of both the Drash and Tobey Affidavits contain legal arguments that are inadmissible before the Court. Paragraphs 5, 9, 10, 11, and 16 of the Drash Affidavit generally state that: (1) the parties did not agree on what documents should be removed from the list attached to the Settlement Memorandum; (2) the conditions set forth in the Settlement Memorandum that were required for settlement to be effective were not met, and thus the Settlement Memorandum was deemed void; (3) there is no settlement in existence that settles this litigation or the arbitration proceeding; and (4) contrary to Plaintiffs' belief, the Settlement Memorandum does not require that paper files be destroyed in the formal settlement document and this dispute between the parties became one of the reasons the Settlement Memorandum is void. The Court finds these statements to be legal argument rather than fact. Accordingly, the Court strikes paragraphs 5, 9, 10, 11, and 16 from the Drash Affidavit.

---

[4] *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1200 (10th Cir. 2006) (quoting *United States v. Sinclair*, 109 F.3d 1527, 1536 (10th Cir. 1997)).

[5] *Id*.

[6] *See Trestle & Tower Eng'g, Inc. v. Star Ins. Co.*, 13 F. Supp. 2d 1166, 1167 n.1 (D. Kan. 1998) (holding that the court shall disregard those portions of the affidavit containing legal conclusions).

[7] *Argo*, 452 F.3d at 1200.

Similarly, paragraphs 4 and 7 of the Tobey Affidavit also contain statements that are legal argument. Paragraph 4 bullet point 5 states "[w]hat these documents reveal – when viewed in total and in chronological context – is that there was essentially no agreement reached on any of the issues that were pending when the 05/07/13 mediation ended and the MEMORANDUM was created."[8] And bullet point nine of paragraph 4 states "one thing [] is clear, Plaintiffs know that there is no agreement on even the files to be removed."[9] And paragraph 7 of the Tobey Affidavit states that "the Memorandum became void pursuant to its terms."[10] The above-referenced statements are not fact but a restatement of Defendants' legal position regarding the enforceability of the Settlement Memorandum. The Court therefore strikes paragraph 4 bullet points 5 and 9 and paragraph 7 of the Tobey Affidavit.

The Court denies Plaintiffs' motion with respect to the remaining paragraphs Plaintiffs seek to strike in the Drash and Tobey Affidavits. Plaintiffs contend that paragraphs 12 through 14 of the Drash Affidavit should be stricken on the basis that they violate Fed. R. Evid. 408 because they refers to the parties' settlement efforts after May 17, 2013. While these paragraphs do refer to and attach a draft formal Settlement Agreement, they do not violate Fed. R. Evid. 408. That rule bars the use of settlement negotiations "to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or contradiction."[11] Here, Defendants are not offering evidence of settlement negotiations to prove or disprove the validity

---

[8] Tobey Affidavit, Doc. 92-4, p. 3.

[9] *Id.*

[10] Tobey Affidavit, Doc. 92-4, p. 4.

[11] Fed. R. Evid. 408.

of Plaintiffs' claims or for impeachment purposes. Therefore, these paragraphs are admissible before the Court.

Finally, Plaintiffs argue that paragraph 5 of the Tobey Affidavit should be stricken because it contains self-serving, post-hoc argument. The Court disagrees. Tobey's statements in paragraph 5 are not argument and merely refer to documents lists attached to the Drash and Tobey Affidavits. Accordingly, the Court denies Plaintiffs' motion with respect to this paragraph.

### III. Drash's Motion for Leave to File Additional Suggestions

Drash seeks leave to file Additional Suggestions in Opposition to Plaintiffs' Motion to Enforce Settlement on the basis that the arbitrator's Final Award precludes the Court from examining whether the parties reached an enforceable settlement agreement. The District of Kansas has construed a motion for leave to file a supplemental memorandum in opposition to a motion submitted by an opposing party as a motion for leave to file a sur-reply.[12] A party must obtain leave of court before filing a sur-reply.[13] In extraordinary circumstances, the Court may grant leave to file a sur-reply on a showing of good cause.[14]

Drash's Additional Suggestions are based on the arbitrator's Final Award. The arbitrator issued the Final Award on September 11, 2013, which was after Defendant's deadline to respond to Plaintiffs' Motion to Enforce Settlement. Drash argues that because the facts and arguments in the Additional Suggestions could only be submitted after September 11, 2013, he has demonstrated good cause as to why the Court should grant him leave. In response, Plaintiffs

---

[12] *Annett v. Univ. of Kan.*, 216 F. Supp. 2d 1249, 1265 (D. Kan. 2002).

[13] *Humphries v. Williams Nat. Gas Co.*, 1998 WL 982903, at *1 (D. Kan. Sept. 23, 1998).

[14] *Cox v. Ann*, 2013 WL 589693, at *1 (D. Kan. Feb. 14, 2013).

argue that Drash has not shown good cause because the arbitrator did not have authority to rule on the enforceability of the Settlement Memorandum.

The Court finds that Drash has not shown good cause as to why he should be granted leave to file the Additional Suggestions. The Court has reviewed the Additional Suggestions and, as explained in its analysis of Plaintiffs' Motion to Enforce Settlement below, finds that the arguments presented would not alter the Court's conclusion regarding Plaintiffs' Motion to Enforce. Accordingly, the Court denies Drash's Motion for Leave to File Additional Suggestions.

## IV. Plaintiffs' Motion to Enforce Settlement

Plaintiffs seek to enforce the Settlement Memorandum against Defendants arguing that it contains the essential terms of the parties' agreement and is enforceable. In response, Defendants argue that (1) the arbitrator's Final Award precludes the Court from re-examining the enforceability of the Settlement Memorandum and (2) the Settlement Memorandum is not enforceable because the conditions set forth in it for settlement to be effective never occurred and because Plaintiffs are in breach of the Settlement Memorandum because they did not make the required timely payment to Drash under the Settlement Memorandum. As explained more fully below, the Court rejects Defendants' arguments and finds that the Settlement Memorandum is an enforceable agreement between the parties.

### A. The Arbitrator's Final Award Is Not Preclusive.

Defendants assert that the arbitrator's Final Award precludes the Court from examining whether the Settlement Memorandum is enforceable. In response, Plaintiffs argue that the arbitrator lacked authority to issue a ruling regarding the enforceability of the settlement

agreement, and therefore, any preclusive effect the arbitrator's ruling had must be denied by the Court. The Court agrees with Plaintiffs.

"[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."[15] The question of arbitrability is an issue for judicial determination.[16] There is a presumption of arbitrability and doubts should be resolved in favor of coverage.[17] That presumption, however, should be applied only "where it reflects, and derives its legitimacy from, a judicial conclusion that arbitration of a particular dispute is what the parties intended because their express agreement to arbitrate was validly formed and . . . is legally enforceable and is best construed to encompass the dispute."[18]

Plaintiffs rely heavily on the Tenth Circuit's decision in *Riley Manufacturing Co. v. Anchor Glass Container Corp.*,[19] in arguing that the arbitrator lacked the authority to issue a ruling regarding the enforceability of the Settlement Memorandum. In *Riley*, the Tenth Circuit addressed the effect of an arbitration provision in an expired manufacturing agreement that was superseded by a settlement agreement. In 1991, Riley entered into a manufacturing and distribution agreement under which Riley agreed to provide Anchor sun and tea jars and Anchor agreed to market Riley's products.[20] The manufacturing agreement expired in 1994.[21] In 1995,

---

[15] *AT&T Tech., Inc. v. Commc'ns Workers of America,* 475 U.S. 643, 648 (1986) (citation omitted).

[16] *Id.* at 649 (citation omitted).

[17] *Id.* at 650 (citation omitted).

[18] *Granite Rock Co. v. Int'l Brotherhood of Teamsters*, 130 S. Ct. at 2859 (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995)).

[19] 157 F.3d 775 (10th Cir. 1998).

[20] *Id.* at 776.

[21] *Id.* at 777.

Riley threatened to sue Anchor for copyright infringement after it learned that Anchor was allegedly still using Riley's copyrighted designs.[22] The parties then entered into a settlement agreement, which had no arbitration provision, to resolve the copyright dispute.[23]

Eight months after entering into the settlement agreement, Riley again discovered that Anchor was allegedly selling sun tea jars with Riley's copyrighted designs.[24] Riley sued Anchor again, asserting copyright infringement and trade secret claims.[25] In response, Anchor argued that the manufacturing agreement required the parties to arbitrate the dispute.[26] The district court disagreed and denied Anchor's motion to compel arbitration.[27]

On appeal, the Tenth Circuit held that an arbitration provision in a contract is presumed to survive the expiration of that contract unless there is express or implied evidence that the parties intended to override the presumption.[28] This presumption, however, disappears if (1) the parties expressly or clearly imply an intent to repudiate post-expiration arbitrability and (2) if the dispute does not arise under the previous contract.[29] Based on the second prong of this analysis, the Tenth Circuit found that the arbitration clause in the manufacturing agreement only applied to disputes that arose under the manufacturing agreement.[30] Therefore, Anchor only had the

---

[22] *Id.*

[23] *Id.*

[24] *Id.* at 778.

[25] *Id.*

[26] *Id.*

[27] *Id.* at 779.

[28] *Id.* at 781.

[29] *Id.*

[30] *Id.*

right to demand arbitration of those claims in Riley's lawsuit that arose under the manufacturing agreement but were not addressed in the settlement agreement.[31]

Unlike *Riley*, this case does not involve an expired contract. However, it does involve a settlement agreement that supersedes an agreement containing an arbitration clause. Indeed, the Settlement Memorandum states that the payment obligation set forth in paragraph 1.A. "supersedes Terracon's obligations under the August 1, 2011, promissory note and any other obligations of Terracon to Drash." Also like *Riley*, the Settlement Memorandum does not contain an arbitration provision, which indicates that the parties did not intend to submit disputes regarding the Settlement Memorandum to arbitration. Furthermore, the dispute at issue does not arise out of Drash's promissory note but the Settlement Memorandum. The parties dispute whether the condition or conditions set forth in the Settlement Memorandum for settlement to be effective were met. Therefore, following the Tenth Circuit's reasoning in *Riley*, the Court finds that the arbitrator lacked the authority to issue a ruling regarding the enforceability of the Settlement Memorandum and the Final Award does not have preclusive effect.

### B. The Settlement Memorandum is an Enforceable Agreement.

A settlement agreement is a contract, and therefore, "[i]ssues involving the formation, construction and enforceability of a settlement agreement are resolved by applying state contract law."[32] "Settlement agreements enjoy a favored status in Kansas."[33] Under Kansas law, a settlement agreement is enforceable if there has been a meeting of the minds on all essential

---

[31] *Id.*

[32] *United States v. McCall*, 235 F.3d 1211, 1215 (10th Cir. 2000).

[33] *Earthmovers, Inc. v. Massey*, 2008 WL 1924938, *2 (D. Kan. Apr. 30, 2008).

terms and the parties intend to be bound by it.[34] Moreover, "the fact that the parties contemplate the subsequent execution of a formal instrument as evidence of their agreement does not necessarily imply they have not already bound themselves to a definite and enforceable contract."[35] Even if the parties leave some matters to be determined in the future that " 'should not prevent enforcement, if some method of determination independent of a party's mere "wish, will and desire" exists, either by virtue of the agreement itself or by commercial practice or other usage or custom.' "[36] The law only requires reasonable certainty, not absolute certainty, as to the terms of the agreement.[37]

Defendants argue that the Settlement Memorandum is not an enforceable agreement because the parties never satisfied the conditions in the Settlement Memorandum required for settlement to be effective. Specifically, Defendants contend that the Settlement Memorandum required the parties to agree on a list of documents that were to be removed from the document lists attached to the Settlement Memorandum by 3:00 p.m. May 17, 2013, and that the parties were required to execute a formal Settlement Agreement by 3:00 p.m. May 17, 2013. Defendants argue that because the parties failed to meet these conditions, the Settlement Memorandum is not enforceable. The Court does not agree with Defendants' arguments.

First, the Court finds that the parties did in fact agree on a list of documents to be removed from the lists attached to the Settlement Memorandum. The evidence shows that as of

---

[34] *Dougan v. Rossville Drainage Dist.*, 15 P.3d 338, 352, 270 Kan. 468, 487-88 (2000).

[35] *Phillips & Easton Supply Co., Inc. v. Eleanor Int'l, Inc.*, 512 P.2d 379, 384, 212 Kan. 730, 735 (1973).

[36] *Nat'l Farms Org., Inc. v. Kinsley Bank*, 731 F.2d 1464, 1470 (10th Cir. 1984) (quoting *Butler v. Westgate State Bank*, 596 P.2d 156, 162, 3 Kan. App. 2d 403, 408, *rev'd on other grounds*, 602 P.2d 1276, 226 Kan. 581 (1979)).

[37] *Lessley v. Hardage*, 727 P.2d 440, 446, 240 Kan. 72, 79 (1986).

7:03 a.m. on May 17, 2013, the parties were down to six disputed items from the document list. Two hours later, the parties reached an agreement as to all but one document, and at 10:26 a.m., Plaintiffs agreed to remove that document from the list and stated that the parties were "agreed on a list."[38] Defendants have not introduced any contemporaneous communications or other evidence that indicates that the parties were not in agreement. The lists Defendants have produced as evidence that no agreement was reached were created in June 2013, well after the parties dispute regarding the enforceability of the Settlement Memorandum arose. Therefore, the Court finds that the parties satisfied paragraph 1.D. of the Settlement Memorandum requiring the parties to agree as to which files were required to be removed from the list.

Second, the Court finds that the preparation and execution of a formal Settlement Agreement was not a condition that the parties were required to meet by the 3:00 p.m. May 17, 2013, deadline for the Settlement Memorandum to be enforceable. Defendants refer to language stating "[t]his settlement is contingent upon subsequent agreement of the parties . . . ."[39] and "[i]f such good faith negotiations fail to produce an agreement by 3:00 p.m. CDT, May 17, 2013, then this settlement agreement shall be void"[40] in arguing that the parties were required to execute a formal settlement document by the 3:00 p.m. deadline for the Settlement Memorandum to be enforceable. That language, however, is set forth in paragraph 1.D. of the Settlement Memorandum and refers only to the condition that the parties agree on a list of documents to be removed from the attached document lists. It does not require the execution of a formal Settlement Agreement. Furthermore, the reference in the Settlement Memorandum to a

---

[38] E-mail from Plaintiffs' Counsel to Defendants' Counsel, Doc. 93-6 p. 2.

[39] Settlement Memorandum, Doc. 93-2, p. 2.

[40] *Id.*

"Settlement Agreement, including releases of claims"[41] comes at the end of the document and lists the party responsible for drafting it. There is no language stating that this document must be prepared and executed by the 3:00 p.m. deadline for the Settlement Memorandum to be effective. And, the fact that the parties contemplated preparation of a more formal settlement document to supplement the Settlement Memorandum does not mean that they did not already bind themselves to an enforceable contract.[42] Accordingly, the Court rejects Defendants' argument that the Settlement Memorandum is not enforceable because the parties did not execute a formal Settlement Agreement by 3:00 p.m. May 17, 2013.

Defendants also argue that the Settlement Memorandum is unenforceable because Plaintiffs failed to make the required first payment to Drash by the May 17, 2013, deadline. Defendants assert that because Plaintiffs are in breach of the Settlement Memorandum by failing to make the payment, they cannot seek to enforce it. Defendants have not cited any authority in support of this argument. Furthermore, the evidence shows that Plaintiffs had prepared and were ready to send a check to Defendants by the May 17th deadline but chose not to after Defendants stated that if the draft Settlement Agreement was not returned to them by the 3:00 p.m. deadline, then the agreement was void. Plaintiffs even offered to provide the check to a mediator to hold in escrow pending further discussions by the parties regarding settlement, but Defendants refused this offer. Defendants' anticipatory breach of the Settlement Memorandum cannot be used to show that the parties never reached an agreement or that the Settlement Memorandum is void.

The Settlement Memorandum contains the essential terms of the parties' agreement and is enforceable. The Settlement Memorandum identifies the parties to this lawsuit and the

---

[41] Settlement Memorandum, Doc. 93-2, p. 3.

[42] *See Nat'l Farmers Org., Inc.*, 731 F.2d at 1470.

arbitration proceeding[43] and states that they have "reached the following agreements as a result of mediation . . . ."[44] Paragraph 1.A. supersedes the promissory note that was the subject of the arbitration proceeding and sets forth the new payment schedule to Drash. Paragraph 1.B. requires the parties to provide mutual releases of all claims. Paragraph 1.C. requires the parties to dismiss and withdraw this lawsuit and the arbitration proceeding. Finally, paragraph 1.D. sets forth the parties agreement to destroy the items on the agreed upon document list. These four paragraphs show that the parties had a meeting of the minds on the essential terms of the agreement.

Finally, the parties dispute whether paragraph 1.D. requires Defendants to destroy all copies or just the single electronic copy stated on the agreed list. Paragraph 1.D. states in part:

> Drash will submit a proposed list of files to be removed from the list and if Terracon does not agree, then the parties will negotiate in good faith as to removal of files from the list. If an agreement is reached, then Drash and DC *shall permanently delete and wipe all electronic documents remaining on the list*.[45]

Plaintiffs argue that paragraph 1.D. requires Defendants to purge all copies, paper and electronic, of the files on the agreed list while Defendants argue that paragraph 1.D. only requires them to delete the single electronic copy stated on the list. The purge requirement of paragraph 1.D. is a matter of contract interpretation, and thus, the Court must first consider whether the language of paragraph 1.D. is ambiguous. "Language in a contract is ambiguous when the words used to express the meaning and intention of the parties are insufficient in the sense that the contract may

---

[43] The Settlement Memorandum names Terracon instead of TT Companies as the Respondent in the arbitration proceeding. Neither party contends that this error shows that there was no meeting of the minds regarding the Settlement Memorandum, as it appears to be a scrivener's error that does not detract from the enforceability of the agreement. *See* Restatement (Second) of Contracts § 155 (stating that a court may reform a writing to correct a mistake of the parties except to the extent that the rights of third parties will be affected).

[44] Settlement Memorandum, Doc. 93-2, p. 2.

[45] *Id*. (emphasis added).

be understood to reach two or more possible meanings."[46] The Court finds that paragraph 1.D. is ambiguous because it could be interpreted to require Defendants to delete all copies of the electronic files on the agreed list or it could be interpreted to require Defendants to just delete the single electronic copy stated on the list.

The Kansas Supreme Court has held that where there is ambiguity or uncertainty in a contract, the intent of the parties is determined by considering the language employed by the parties, the circumstances existing when the agreement was made, the object sought to be attained, and other circumstances, if any, that clarify the intent of the parties.[47] Contract interpretations which give meaning to all terms in a contract are preferable to those that do not.[48] Here, paragraph 1.D. requires Defendants to "permanently delete and wipe" the remaining documents on the list. Allowing Defendants to keep identical copies of the same document in other locations and formats is not a permanent deletion and frustrates the entire purpose of paragraph 1.D. For example, if Defendants are allowed to only delete the listed electronic document, they could theoretically still use that document by converting its hard copy form to electronic form and resaving it to its original location. Therefore, the Court construes paragraph 1.D. to require Defendants to delete all copies of the listed documents in their possession, custody, or control.

---

[46] *Richardson v. Northwest Cent. Pipeline Corp.*, 740 P.2d 1083, 1087, 241 Kan. 752, 758 (1987).

[47] *Univ. Motor Fuels v. Johnston*, 917 P.2d 877, 881, 260 Kan. 58, 63 (1996).

[48] *Dillard Dep't Stores, Inc. v. State, Dep't of Human Res.*, 13 P.3d 358, 363, 28 Kan. App. 2d 229, 235, (2000) (citing *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 63 (1995)).

**IT IS ACCORDINGLY ORDERED** this 19th day of November, 2013, that Plaintiffs' Motion to Enforce Settlement (Doc. 90) is hereby **GRANTED**.

**IT IS FURTHER ORDERED** this 19th day of November, 2013, that Plaintiffs' Motion to Strike Portions of Affidavits of Carl P. Tobey and Chester Drash (Doc. 94) is hereby **GRANTED IN PART AND DENIED IN PART**.

**IT IS FURTHER ORDERED** this 19th day of November, 2013, that Defendant Chester J. Drash, Jr.'s Motion for Leave to File Additional Suggestions in Opposition to Plaintiffs' Motion to Enforce Settlement (Doc. 104) is **DENIED**.

**IT IS SO ORDERED**.

*[signature]*
ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE